

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

———————

No. 2:20-cv-225

———————

MICHAEL H. ROSFELD,

                              Plaintiff

v.

THE UNIVERSITY OF PITTSBURGH – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, *et al.*,

                              Defendants.

———————

**MEMORANDUM OPINION**

———————

**J. Nicholas Ranjan, United States District Judge**

    The Court previously dismissed Mr. Rosfeld's complaint based on his failure to plead facts showing either (1) that he had a constitutionally protected property interest in his employment as a University of Pittsburgh police officer; or (2) that his resignation from the University was coerced.  In his amended complaint, Mr. Rosfeld addresses the former issue by alleging that he was employed under a collective bargaining agreement forbidding termination without "just cause."  But on the latter—the voluntariness of his resignation—Mr. Rosfeld's new allegations come up short.

In fact, Mr. Rosfeld now clarifies that resigning was his idea. Defendants intended to terminate him, but he offered to resign instead, presumably to avoid the professional stigma of termination. Defendants then chose to accept his offer. Mr. Rosfeld has not alleged that anyone demanded (or even asked) that he resign, nor that he was deceived into doing so. And while the termination meeting convened by Defendants was undoubtedly a stressful experience for Mr. Rosfeld, the "duress" that is inherent in any involuntary termination meeting does not somehow compel an employee to offer up his resignation instead.

In short, while Defendants may well have been required to provide Mr. Rosfeld with due process before *terminating* him, his unprompted decision to *resign* instead relieved them of that obligation. Thus, the Court will again grant Defendants' motion to dismiss, this time with prejudice.

## **BACKGROUND**

The following facts are drawn from the allegations in Mr. Rosfeld's operative complaint, which the Court must accept as true for purposes of this motion under Federal Rule of Civil Procedure 12(b)(6). [ECF 39].

Mr. Rosfeld was employed as a University of Pittsburgh police officer, subject to the terms of a collective bargaining agreement, from October 15, 2012 until January 18, 2018. [*Id.* at ¶¶ 8, 9, 13, 27]. On the evening of December 9, 2017, Mr. Rosfeld was dispatched to an incident at the Garage Door Saloon on Atwood Street. [*Id.* at ¶ 14]. He arrived on scene at 11:02 p.m. to assist two other university police officers, Josh McGinnis and Adam Dimit. [*Id.* at ¶ 15]. Upon his arrival, Mr. Rosfeld encountered Timothy Riley, Jacob Schilling, and Daniel Humphrey—all of whom were being detained by Officer McGinnis. [*Id.* at ¶ 16].

After he arrived on scene, Mr. Rosfeld learned that Messrs. Riley, Schilling, and Humphrey had been ejected from the Garage Door Saloon for their "unruly behavior." [*Id.* at ¶ 17]. Mr. Rosfeld entered the Garage Door at approximately 11:10 p.m. to investigate the incident and review security footage of what had occurred. [*Id.* at ¶ 18]. His review showed: (1) Mr. Riley and an unidentified male

being "removed from the premises," and the unidentified male "kick[ing] the entry door to the bar, causing it to shatter," [*Id.* at ¶ 19(a)]; (2) Messrs. Schilling and Humphrey being "ejected from the premises" and Mr. Schilling "str[iking] a Garage Door employee with his fists," [*Id.* at ¶ 19(b)-(c)]; (3) Messrs. Riley and Humphrey "rais[ing] [their] fists and str[iking] a Garage Door employee," [*Id.* at ¶ 19(d)]; and (4) Messrs. Schilling, Riley, and Humphrey "attempt[ing] to regain entry to the Garage Door." [*Id.* at ¶ 19(e)].

Following his review of the surveillance video, Mr. Rosfeld exited the bar. [*Id.* at ¶ 20]. Based on the video footage and his "personal encounter" with each suspect, Mr. Rosfeld arrested Messrs. Riley, Schilling, and Humphrey. [*Id.* at ¶ 21]. The charges included simple assault, disorderly conduct, defiant trespass, and public intoxication. [*Id.*]. Mr. Rosfeld transported the three arrestees to the Allegheny County Jail and concluded his shift at approximately 7:00 a.m. on December 10, 2017. [*Id.* at ¶ 22].

The following day, the Deputy Chief of the University of Pittsburgh Police (Holly Lamb) and Officer David Basile appeared at Mr. Rosfeld's home and "informed [him] that an investigation concerning him had been initiated." [*Id.* at ¶ 23]. Mr. Rosfeld was not told "the nature of the investigation, only that one had been commenced." [*Id.*]. Deputy Chief Lamb confiscated Mr. Rosfeld's police identification card, informed him that he was on administrative leave, and instructed him to await further contact from his superiors. [*Id.* at ¶ 24]. Six weeks later, University of Pittsburgh Police Commander Robert Holler contacted Mr. Rosfeld, and directed him to appear at headquarters on January 18, 2018. [*Id.* at ¶ 21].

Upon arrival at headquarters, Mr. Rosfeld was met by the Chief of the University of Pittsburgh Police (Defendant James Loftus), Deputy Chief Lamb, Commander Holler, and Officers Scott Debrosky and Ray Petersen. [*Id.* at ¶ 26]. Immediately upon his arrival, Mr. Rosfeld was, "without discussion or explanation," provided a memorandum which stated:

> Your employment with the University of Pittsburgh Police is terminated effective today, Thursday, January 18, 2018. This is in reference to Internal Investigation #17-04683.

[*Id.* at ¶ 27].

Mr. Rosfeld believes that "the investigation involved the Garage Door Saloon arrest" because "the incident report generated by [Mr. Rosfeld] was identified as Complaint / Incident Number 17-04683." [*Id.* at ¶ 28] (cleaned up). Mr. Rosfeld was not provided with notice or an explanation of the charges against him at the time he was presented with the termination notice. [*Id.* at ¶ 29]. According to Mr. Rosfeld, the "extreme duress" created by this situation "coerced" him into "immediately requesting resignation in lieu of termination." [*Id.* at ¶ 30].

Defendants accepted Mr. Rosfeld's offer to resign rather than be fired, and Mr. Rosfeld was permitted to add the following language to the termination letter: "I, Michael Rosfeld, resign effective immediately. Michael H. Rosfeld. 1/18/18." [*Id.* at ¶ 31]. Defendants did not offer Mr. Rosfeld any option besides termination or resignation. [*Id.* at ¶ 34]. Mr. Rosfeld did not consult with counsel beforehand, because he "was unaware of the purpose" of the meeting. [*Id.* at ¶ 34]. After the meeting, without Mr. Rosfeld's knowledge, Chief Loftus added the following words to the termination document: "BY REQUEST OF HIS UNION REPRESENTATIVE, MICHAEL ROSFELD WAS ALLOWED TO RESIGN, WITHOUT THE RIGHT TO APPEAL AT 11:45 A.M., 1/18/18." [*Id.* at ¶ 41].

Mr. Rosfeld alleges that Defendants' failure to provide him with "notice of the charges" against him, an "explanation of [Defendants'] evidence," or an "opportunity to respond to the charges alleged" violated his procedural due process rights under the Fourteenth Amendment and the analog provision of the Pennsylvania state constitution. [*Id.* at ¶ 51]. More specifically, Mr. Rosfeld contends that Defendants unconstitutionally deprived him of a "property right in his employment" as a police officer without affording him due process in the form of a *Loudermill* hearing. [*Id.*].

Mr. Rosfeld filed this lawsuit in state court on January 16, 2020 and amended his complaint on February 10, 2020. [ECF 1-3; ECF 1-2]. Defendants removed the case to this Court on February 13, 2020 based on federal question jurisdiction. [ECF 1].

Following removal, Mr. Rosfeld initially moved to remand the case, [ECF 8], but later withdrew that motion, [ECF 22], and instead filed a second amended complaint to assert federal constitutional claim more explicitly. [ECF 23]. In lieu of an answer, Defendants filed a motion to dismiss for failure to state a claim. [ECF 28]. The Court granted the motion on May 12, 2020, but dismissed Mr. Rosfeld's claims without prejudice and gave him leave to amend his complaint "one last time." [ECF 36].

Mr. Rosfeld timely filed a third amended complaint on May 20, 2020. [ECF 39]. Defendants renewed their motion to dismiss on June 3, 2020. [ECF 40]. That motion is now fully briefed and ready for decision.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of the complaint." *Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 113 (W.D. Pa. 2019) (Stickman, J.) (citation omitted). Such a motion "may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that [the] plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).

To evade dismissal, the plaintiff must allege "sufficient factual matter to show that the claim is facially plausible" and permit a "reasonable inference that the defendant is liable for the misconduct alleged." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (cleaned up). Allegations that are "conclusory or bare-bones," such as "threadbare recitals of the elements of a cause of action," will not suffice. *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (cleaned up). However, "detailed pleading is not generally required." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). Rather, the complaint need only contain a "short and plain

statement" showing "more than a sheer possibility that a defendant acted unlawfully." *Id.* (cleaned up).

The burden of establishing that no plausible claim has been presented lies with the defendant. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). When evaluating a defendant's motion to dismiss, the Court can only consider the allegations of the plaintiff's complaint, the exhibits attached to it, and any documents that are integral to or explicitly relied on by the complaint. *Popa*, 426 F. Supp. 3d at 113 (citations omitted).

## DISCUSSION & ANALYSIS

"If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights." *Lehaney v. City of Pittsburgh*, 183 F.3d 220, 227 (3d Cir. 1999) (citations omitted). What's more, absent contrary evidence, employee resignations are "presumed to be voluntary." *Id.* The issue here is whether Mr. Rosfeld has pled facts that, if proven true, could plausibly overcome that presumption. One way this presumption can be overcome is by pleading that the employer "force[d] the resignation … by coercion or duress." *Id.* at 228.

When making this determination, the Court applies an "objective standard." *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125 (3d Cir. 2018). In other words, the "ultimate issue" is not what Mr. Rosfeld "felt or believed," but "whether a reasonable person under the circumstances would have felt compelled to resign." *Id.* (cleaned up). [1]

---

[1] The analysis is the same for Mr. Rosfeld's claim under Article I, Section I of the Pennsylvania Constitution. *See Pennsylvania Game Comm'n v. Marich*, 666 A.2d 253, 255 n.6 (Pa. 1995) ("[T]he requirements of Article I, Section I of the Pennsylvania Constitution are not distinguishable from those of the 14th Amendment[.]") (citation omitted).

## I. Mr. Rosfeld has still not plausibly alleged that Defendants coerced him to resign.

Mr. Rosfeld claims that Defendants "coerced" him into "immediately requesting resignation" under "extreme duress." [ECF 39, ¶ 30]. But the only action he attributes to Defendants is that of handing him a termination notice and failing to provide him with any alternative. That is not enough to show that his resignation was involuntary.

Whatever Mr. Rosfeld's subjective experience of this event might have been, his generalized allegations of "duress" do not describe a situation in which "a reasonable person … would have felt compelled to resign." *Judge*, 905 F.3d at 125. No one demanded Mr. Rosfeld's resignation, threatened him if he refused to resign, or, for that matter, even mentioned resignation to him. Rather, it was Mr. Rosfeld himself who "immediately request[ed] resignation" after being told he faced termination. [ECF 39, ¶ 30].

In arguing otherwise, Mr. Rosfeld relies on a five-factor test for voluntariness used by a district court in the Eastern District of Pennsylvania. *See O'Connell v. County of Northampton*, 79 F. Supp. 2d 529, 533 (E.D. Pa. 1999). More recently, the same test was adopted by the Third Circuit as the standard for evaluating claims of constructive discharge in employment discrimination cases. *See Judge*, 905 F.3d at 125. Here, however, Mr. Rosfeld's reliance on that standard is misplaced.

The *Judge* and *O'Connell* factors contemplate a situation where an employer presents an employee with something akin to a "resign or else" demand. In other words, they provide the standard for evaluating whether an employer's demand that an employee resign amounted to a thinly veiled firing under another name. *See Judge*, 905 F.3d at 124 ("The letter continued: If you do choose to resign then I will offer a neutral reference in the future upon inquiry. ... [I]n the alternative, if you decide not to resign and DUI charges are filed against you then I will be forced to issue a written statement of charges for dismissal."); *O'Connell*, 79 F. Supp. 2d at 533 ("[P]laintiff claims that the conduct of defendants Brackbill and Billota at the meeting where they requested his resignation amounted to coercion or duress."); *see also Palka v. Shelton*,

623 F.3d 447, 453 (7th Cir. 2010) ("[C]oerced resignation is characterized by the presence of a Hobson's choice in which the employee must resign or suffer severe consequences, such as facing criminal charges.").

For example, the first factor asks "whether the employee was presented with an alternative to resignation," which implies that the employer presented the employee with a demand for resignation in the first place. *O'Connell*, 79 F. Supp. 2d at 533. Likewise, the other factors refer to the employee being given a "choice" between resignation and some threatened alternative. *Id.*

Collectively, these factors evaluate whether the alternative (if any) presented by the employer while "***requesting resignation***" is sufficiently threatening to "effectively depriv[e] the employee of free choice in the matter." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 174 (4th Cir. 1988) (emphasis added). But they are ill-fitting to a case like this—where an employer had no intention of offering anything other than termination until the employee himself asked to resign.

Unlike resignation, a termination is inherently coercive—the employee is, by definition, being removed from his position against his will. Thus, it is not surprising that Mr. Rosfeld was "not given a choice" or presented with a less severe "alternative" in the context of what was intended to be a termination meeting. That is what happens in such meetings. It is also why, if Defendants had carried out their original plan, Mr. Rosfeld would have been entitled to due process, in the form of a "brief and informal" hearing, before any decision was finalized. *Scmidt v. Creedon*, 639 F.3d 587, 596-97 (3d Cir. 2011).

But that's ultimately beside the point—Defendants' termination of Mr. Rosfeld was aborted, and there is no dispute that he resigned. The issue is whether Defendants' *forced* him to do so. *See Judge*, 905 F.3d at 125 ("[W]e ask whether Shikellamy ***forced the resignation*** … by coercion or duress.") (cleaned up) (emphasis added). They did not. Indeed, it is difficult to imagine how a court, or a jury, could ever make such a finding in a case where resigning was the employee's idea and the employer did not mention (let alone demand) the employee's resignation at

all. As Defendants argue, the mere "decision to grant [Mr. Rosfeld's] request is not coercion." [ECF 41, p. 4].[2]

In any event, even if the Court squints hard enough to see this as a case where Mr. Rosfeld was "induced" to offer his resignation by the "threat" of termination, that would not mean that his resignation was involuntary. Other courts considering this issue have universally held that something more than the alternative "threat" of termination is required to undermine the presumption that an employee's resignation is voluntary. *See, e.g., Ulrey v. Reichart*, 941 F.3d 255, 263 (7th Cir. 2019) ("[T]he rare, legally viable claims of coerced resignation have typically involved threats beyond termination, such as criminal prosecution or physical harm."); *Hargray v. City of Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995) ("Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff had a choice. [He] could stand pat and fight.") (cleaned up); *Stone*, 855 F.2d at 174 ("[T]he mere fact that the choice is between comparably unpleasant alternatives—*e.g.*, resignation or facing disciplinary charges—does not of itself establish that a resignation was induced by duress or coercion, hence was involuntary."); *DeWalt v. Barger*, 490 F. Supp. 1262, 1277 (M.D. Pa. 1980) ("[T]he resignation of the plaintiff, although executed while plaintiff was under considerable

---

[2] Separately, Mr. Rosfeld cites *Gross v. Village of Minerva Park Village Council*, 997 F. Supp. 2d 813 (S.D. Ohio 2014) for the unremarkable proposition that an employee is entitled to a *Loudermill* hearing "before" the employer announces that a decision to terminate the employee has been made. As a general principle, that is surely true. But it is also irrelevant here, because while it is true that Defendants allegedly announced their intent to terminate Mr. Rosfeld up front, they ultimately did not terminate him—they accepted his resignation instead. Thus, the relevant question is not whether Defendants were on track to comply with *Loudermill* if they *had* deprived Mr. Rosfeld of his property interest by termination. Defendants never deprived Mr. Rosfeld of anything. He resigned, thereby depriving himself of his property interest. And without a deprivation of a property interest *by Defendants*, there can be no due-process claim.

stress, was not coerced by defendant so as to make the resignation a 'constructive discharge' in violation of plaintiff's right to due process."); *Christie v. United States*, 518 F.2d 584, 588 (Ct. Cl. 1975) ("This court has repeatedly upheld the voluntariness of resignations where they were submitted to avoid threatened termination for cause.").

That is for good reason. Indeed, "the possibility of eventual termination, without more, cannot render a resignation involuntary," because "otherwise, a due process violation would result whenever a public employee resigned rather than asserting his or her (usually extensive) procedural rights." *Ulrey*, 941 F.3d at 263 (citation omitted). That would be unworkable.

A contrary rule would also fail to comport with the "objective standard" of "whether a reasonable person under the circumstances would have felt compelled to resign." *Judge*, 905 F.3d at 125. That is, an employee entitled to due process is not reasonably "compelled to resign" in such circumstances, because he remains free to assert his procedural rights and "stand pat and fight." *Hargray*, 57 F.3d at 1568 (citation omitted). In contrast, an employee who was, for example, threatened with criminal charges, bodily harm, or blackmail could reasonably argue that the option to assert his rights was, for all practical purposes, foreclosed by the employer's threat. Of course, Mr. Rosfeld alleges nothing like that here.

For these reasons, Mr. Rosfeld has once again failed to state a plausible claim for relief. The Court will grant Defendants' motion to dismiss. *Cf. Symonies v. McAndrew*, 416 F. Supp. 3d 377, 393 (M.D. Pa. 2019) (granting motion for judgment on the pleadings as to former deputy sheriff's due-process claim based on failure to allege facts showing that deputy's retirement was involuntary or coerced).[3]

---

[3] Having found that Mr. Rosfeld fails to plausibly allege that his resignation was involuntary, the Court does not reach Defendants' alternative argument that Mr. Rosfeld's claim should be dismissed because he did not comply with the grievance procedures established by his collective bargaining agreement.

## II. The Court will dismiss the amended complaint with prejudice.

The last issue for the Court to decide is whether it should now dismiss Mr. Rosfeld's complaint with prejudice. The Third Circuit has stated that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Here, any further amendment would be futile for three reasons.

First, in granting Defendants' previous motion to dismiss, the Court already provided Mr. Rosfeld with an opportunity to amend his complaint to address the very same issues. The Court also expressly warned that this would be his last chance. *See* [ECF 36]. Despite this warning, Mr. Rosfeld has not been able to correct the deficiencies. That failure is, in itself, strong evidence that the issues identified by the Court are not correctable.

Second, the problem with Mr. Rosfeld's complaint is not that there are facts missing that he needs to flesh out, at least not anymore. Instead, the problem is that his claim lacks a legal basis now that he admits that he asked to resign, unprompted, as soon as Defendants informed him that they intended to terminate his employment. Mr. Rosfeld cannot cure the legal deficiency of this claim through additional factual development, at least without contradicting the allegations in his amended complaint. *Cf. Adelman v. Jacobs*, No. 18-607, 2019 WL 1651612, at *6 (W.D. Pa. Apr. 17, 2019) (Fischer, J.) ("[F]urther amendment of these claims would be futile given the Court's analysis of the claims set forth above.").

Third, Mr. Rosfeld has not asked for any further opportunity to amend his complaint or attached a proposed amended complaint, let alone explained how another pleading might help him to adequately state a claim. This weighs heavily in favor of denying him another chance at amendment. *See, e.g., Davis v. Holder*, 994 F. Supp. 2d 719, 727 (W.D. Pa. 2014) (Gibson, J.) (dismissing with prejudice where "Davis has not filed a proposed amendment with the Court nor has he explained how he would amend Count Three of the complaint to allege state action."); *Adelman*,

2019 WL 1651612, at *6 ("Plaintiffs already filed an amended pleading in this matter and have not affirmatively sought leave to file a second amended complaint nor supplied this Court with a proposed pleading such that leave to amend may be denied on these grounds as well.") (citations omitted).

Given these considerations, the Court will dismiss Mr. Rosfeld's complaint with prejudice.

## **CONCLUSION**

For all these reasons, Defendants' motion to dismiss is granted, and Mr. Rosfeld's third amended complaint is dismissed with prejudice.

An appropriate order follows.

DATED this 10th day of August, 2020.

                BY THE COURT:

                /s/ *J. Nicholas Ranjan*
                United States District Judge